UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOSE ALFREDO SANTIAGO CASTRO, | Case No. 2:26-cv-1283-ART-NJK |
| Plaintiff, | ORDER ON AMENDED PETITION FOR HABEAS CORPUS (ECF No. 6) |
| v. | |
| JOHN MATTOS, NSDC Warden; MICHAEL BERNACKE, Field Director, West Valley City Office of ICE ERO; TODD LYONS, ICE Acting Director; MARKWAYNE MULLINS, DHS Secretary; TODD BLANCHE, Acting U.S. Attorney General, | |
| Defendants. | |

Before the Court is Petitioner Jose Alfredo Santiago Castro's Amended Petition for Habeas Corpus, seeking release or a bond hearing on the basis that his procedural due process rights have been violated. (ECF No. 6.) Also before the Court is Petitioner's Motion to Seal. (ECF No. 7.) On June 12, 2026, the Court heard oral argument on this matter. The Court now grants the Amended Petition with respect to Mr. Santiago Castro's request for a bond hearing.

## I.    Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of

habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## II.   Analysis

### a.  Administrative Exhaustion

"Administrative exhaustion can be either statutorily required or judicially imposed as a matter of prudence." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citation omitted). "Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).

Section 2241 contains no statutory exhaustion requirement. *See* 28 U.S.C. § 2241. Administrative exhaustion is therefore not jurisdictional but rather prudential in Section 2241 immigration detention habeas proceedings. *See Laing v. Ashcroft*, 370 F.3d 994, 997-98 (9th Cir. 2004).

Consequently, courts have the authority to waive the administrative exhaustion requirement under certain circumstances. *See id* at 1000. In *Leonardo v. Crawford*, the Ninth Circuit held that "[w]hen a petitioner does not exhaust administrative remedies [with the BIA], a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." 646 F.3d at 1160. Moreover, the *Leonardo* Court references "factors a court should consider when deciding whether to excuse the prudential exhaustion requirement in a particular case." *Id.* (citations omitted).

Various situations merit waiver of administrative exhaustion, "such as where administrative remedies are inadequate or not efficacious, pursuit of

administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing*, 370 F.3d at 997-98 (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)).

Petitioner here has demonstrated that he will suffer irreparable injury should exhaustion not be waived. Unlawful detention "constitutes extreme or very serious damage, and that damage is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). Petitioner has been detained for three months and will continue to suffer irreparable harm each day he is in immigration detention. *See Doroteo-Chavez v. Noem, et al.,* No. 2:26-cv-00049-RFB-DJA, 2026 WL 1031190, at *6 (D. Nev. Apr. 16, 2026) (citing *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)).

Accordingly, the Court finds waiver of prudential exhaustion is appropriate in this case.

### b. **Finding of Dangerousness**

Petitioner argues that he was deprived of due process in his custody redetermination hearing because the IJ abused his discretion when he denied bond on a determination of dangerousness to the community in reliance on an insufficient and inaccurate record. The Court agrees.

In *Martinez v. Clark*, the Ninth Circuit clarified that a district court's habeas review of a denial of bond by an IJ is limited to whether the IJ abused its discretion in applying the correct legal standard. 124 F.4th 775, 782-83 (9th Cir. 2024). The court explained in *Martinez* that "'factual question[s] raised in an application for discretionary relief' remain unreviewable." *Id.* at 782-83 (citing *Wilkinson v. Garland*, 601 U.S. 209, 222 (2024)). This includes underlying factual determinations such as "credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides." *Id.* at 783. The district court may properly review in habeas whether the IJ abused its discretion in the applying "a legal standard" "to a given

set of facts," including a finding of dangerousness or flight risk. *Id.* at 784 (citing *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014). Under this standard, courts "cannot reweigh evidence … [but] can [only] determine whether the [IJ] applied the correct legal standard." *Id.* (citing *Konou*, 750 F.3d at 1127) (alterations in original).

Thus, a district court may review under an abuse of discretion standard whether the IJ "properly considered the factors set forth in" *In Re Guerra*, 24 I. & N. Dec. 37 (BIA 2006). *Id.* Under *Guerra*, to determine whether a noncitizen "is a danger to the community or a risk of flight, an IJ weighs "nine factors" including "any or all of the following": (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States. *Id.* at 784 (citing *Guerra*, 24 I. & N. Dec. at 40). When considering criminal activity, an IJ may rely on criminal arrests so long as the evidence supporting the charge is "specific and probative." *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1004 (N.D. Cal. 2018) (finding a due process violation where IJ relied on limited information from an arrest to justify denial of bond).

In this case, the IJ found that Petitioner was a danger to the community because he had "two DUI arrests in the last 15 years" and "multiple voluntary returns to Mexico." (ECF No. 6 at 6.) At the hearing before the IJ, Petitioner's counsel reiterated that there was no evidence that Petitioner was ever charged with DUI following his March 2026 arrest. (ECF No. 24-3 at 4:30-4:50.) Despite

this, the IJ made several statements indicating that he was treating that arrest as conclusive evidence that Petitioner committed this offense, stating that Petitioner "obviously didn't learn from his first DUI," when he "committed another DUI" (ECF No. 24-3 at 7:05-7:15), and then repeating four more times that the Petitioner "committed" the offense. (ECF No. 24-3 at 7:24-7:29; 8:05-8:08; 9:10-9:12; 9:40-9:43.) The IJ expressly stated that this criminal history outweighed other equitable factors (including his fixed address, length of residence, family ties, and employment) that would have gone towards the Petitioner being released on bond.

The IJ relied on an inaccurate assumption about the Petitioner's criminal history without probative and specific evidence. (ECF No. 24-3 at 8:00-8:05.) "There cannot be a correct application of a standard to a set of facts when the facts relied on are incorrect." *K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *11 (W.D. Wash. Apr. 9, 2026). The only record of the 2026 DUI arrest is a temporary custody record. (ECF No. 13-1.) Nothing in the record indicates that the IJ had probative and specific evidence regarding the arrest because there is no arrest report and no evidence that Petitioner was charged with this offense. *See Ortega-Rangel*, 313 F. Supp. 3d at 1004. Without anything more than the fact that Petitioner was arrested, the IJ had no facts to rely upon to determine that he would be a danger to the community. The IJ also had no factual basis to consider the severity of the facts surrounding the arrest, potential jail time, or Petitioner's rehabilitative efforts. *See Calderon-Rodriguez v. Wilcox*, 374 F. Supp. 3d 1024, 1036 (W.D. Wash. 2019) (finding that IJ abused their discretion by finding clear and convincing evidence of dangerousness without considering additional facts surrounding petitioner's criminal history).

Therefore, the Court finds that the IJ abused his discretion in finding that Petitioner was dangerous because he "committed another DUI" when the record evidence showed that he was never charged with that offense. Because the Court

grants the petition on this ground, it does not reach Petitioner's other grounds for relief.

### c. **Motion to Seal**

Petitioner also seeks leave to file a supplement to the Amended Petition under seal. (ECF No. 7.) There is a strong presumption in favor of public access to judicial filings and documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). "[T]he strong presumption of access to judicial records applies fully to dispositive pleadings." *Kamakana*, 447 at 1179 (9th Cir. 2006). A party seeking to overcome this presumption with regards to a dispositive pleading or attachment thereto must "'articulate[] compelling reasons supported by factual findings' ... that outweigh the general history of access and the public policies favoring disclosure, such as the 'public interest in understanding the judicial process.'" *Id.* at 1178-79 (quotations omitted). "'[C]ompelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,'" *Kamakana*, 447 F.3d at 1179 (citations omitted). However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003)). A court "must 'conscientiously balance[] the competing interests' of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1179 (quoting *Foltz*, 331 F.3d at 1135).

In this case, Petitioner seeks to seal information related to his and his family's confidential medical information, information related to disability, and information related to a juvenile U.S. citizen. This Court, and others within the Ninth Circuit, have recognized that the need to protect medical privacy qualifies as a "compelling reason" for sealing records, since medical records contain

6

sensitive and private information about a person's health. *See, e.g., Spahr v. Med. Dir. Ely State Prison,* No. 3:19-CV-0267-MMD-CLB, 2020 WL 137459, at *2 (D. Nev. Jan. 10, 2020); *Sapp v. Ada Cnty. Med. Dep't,* No. 1:15-CV-00594-BLW, 2018 WL 3613978, at *6 (D. Idaho July 27, 2018); *Karpenski v. Am. Gen. Life Companies, LLC*, No. 2:12-CV-01569RSM, 2013 WL 5588312, at *1 (W.D. Wash. Oct. 9, 2013). Balancing the need for the public's access to information regarding Petitioner and his family's medical history, treatment, and condition against the need to maintain the confidentiality of these medical records weighs in favor of sealing this exhibit. Therefore, the Court will grant Petitioner's motion.

**III.    Conclusion**

It is therefore ordered that the Amended Petition (ECF No. 6) is GRANTED.

It is further ordered that Respondents must provide Petitioner with a constitutionally adequate bond hearing where the government bears the burden of establishing dangerousness or flight risk by clear and convincing evidence no later than July 2, 2026.

If a bond hearing is not provided by July 2, 2026, the Petitioner is to be immediately released from custody.

It is further ordered that the parties must file a joint status report within ten (10) days of providing Petitioner with a bond determination hearing.

It is further ordered that if bond is denied, Federal Respondents must (1) attach the order of the immigration court to the joint status report and (2) provide the contemporaneous record of the bond hearing to Petitioner's counsel immediately upon request.

It is further ordered that the Motion to Seal (ECF No. 7) is GRANTED.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce judgment without filing a separate case.

Dated this 18th day of June, 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE